UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NERY ROHTTIS,

      Plaintiff,

v.                    Case No: 2:21-cv-737-JES-NPM

THE SCHOOL DISTRICT OF LEE
COUNTY, FLORIDA,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss Plaintiff's Complaint (Doc. #14) filed on November 23, 2021. Plaintiff filed a Response in Opposition (Doc. #20) on December 23, 2021.  For the reasons set forth below, the motion is granted.

**I.**

Plaintiff Nery Rohttis (Plaintiff or Rohttis) filed a six-count Complaint against the School District of Lee County, Florida (Defendant or School District). (Doc. #2.) Defendant now moves to dismiss the Complaint *en toto* for failure to state claims upon which relief may be granted. (Doc. #14.)

**A. Factual Background**

According to the Complaint, Plaintiff was employed by the School District for nineteen years until her termination on August 7, 2019. (Id., ¶¶ 4, 7, 22.) Plaintiff worked for Defendant as a

1

school bus operator, and participated in and was a beneficiary of the School District's employee benefits plan and was receiving "fringe and pension benefits" before her termination. (Id., ¶¶ 7-8.)

On March 15, 2018, Plaintiff suffered a work-related injury to her left shoulder, hip and hand, and her lower back which required hospitalization. (Id., ¶ 9.) Plaintiff filed a worker's compensation claim on the same day of her work accident. (Id.) Following the accident, Plaintiff's medical providers placed her on light-duty work restrictions. (Id., ¶ 10.) To accommodate Plaintiff's restrictions, the School District reassigned Plaintiff to various jobs, including an "English Speaker Other Languages (ESOL) Paraprofessional; In-School Suspension (ISS) Paraprofessional; and/or various assignment(s) as Defendant deemed necessary." (Id., ¶ 11.)

On April 9, 2019, Plaintiff's treating physician, Dr. Gomez, released Plaintiff back to regular-duty work, but noted that maximum medical improvement (MMI) could not be determined. (Id., ¶ 12.) On May 7, 2019, Plaintiff underwent a "driver's test" at Defendant's request, despite the School District having knowledge that Plaintiff had not been released by Dr. Tafel.[1] (Id., ¶ 13.)

---

[1] The Complaint alleges that Plaintiff had sought a "second opinion" from Dr. Tafel, but does not provide further details. (Doc. #1, ¶ 13.)

During Plaintiff's driving test, she experienced physical difficulties with her left hand. (Id., ¶ 14.) Dr. Tafel released Plaintiff to regular-duty work on May 20, 2019, with a MMI rating of two percent. (Id., ¶ 15.) Dr. Tafel diagnosed Plaintiff with left upper extremity pain, and a "physical impairment that substantially limited one or more major life activities." (Id.) On the same day, Defendant suspended Plaintiff without pay and with no explanation. (Id., ¶ 16.)

While Plaintiff was suspended, Defendant coerced Plaintiff into using her sick leave. (Id., ¶ 17.) Plaintiff sent a certified letter to the School District, requesting an explanation for her suspension. (Id., ¶ 18.) Defendant received the certified letter on May 28, 2019, but did not respond to Plaintiff's request. (Id.) Following her suspension, but prior to Plaintiff's termination, Defendant sent a "district representative" to her personal residence "to harass" Plaintiff. (Id., ¶ 19.) On August 7, 2019, Plaintiff was terminated for "abandonment of her position." (Id., ¶ 22.) Prior to her termination, Plaintiff did not have any disciplinary actions noted in her personnel folder. (Id., ¶ 20.)

## B. Procedural Background

On October 6, 2021, Plaintiff filed a six-count Complaint for employment discrimination pursuant to the American Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Family and Medical Leave Act of 1933 (FMLA), 29 U.S.C. § 2414(a)(1), and § 440.205, Florida

3

Statutes. (Doc. #2, ¶ 2.) Plaintiff alleges the following claims against Defendant: (1) retaliation; (2) violation of the FMLA; (3) violation of school district policy/race/national origin discrimination/violation of due process; (4) failure to accommodate disability; (5) unlawful termination of employment; and (6) retaliation in violation of § 440.205, Fla. Stat. (Id., pp. 4-10.)  Defendant urges the Court to dismiss all counts in the Complaint because the claims do not provide sufficient facts upon which Plaintiff may show she is entitled to relief. (Doc. #14.)

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555.  See also, Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

### A. Count I — Retaliation

Count I of the Complaint alleges that Defendant retaliated against Plaintiff when it terminated her in August 2019, after she filed her initial complaint with the Equal Employment Opportunity Commission (EEOC). (Doc. #2, ¶ 22.) Count I does not identify any law under which the "Retaliation" claim is filed, although

Defendant (and the Court) are guessing this count relates to the ADA.

The ADA prohibits covered employers from retaliating against an employee who "has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). To establish a prima facie ADA discrimination claim, plaintiff must allege (1) that she engaged in protected activity under the statute, (2) that she suffered an adverse employment action, and (3) a causal connection between the protected acts and the adverse employment action. Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018) (citing Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006)).

Defendant argues that Plaintiff cannot satisfy the third element of her prima facie discrimination claim because she has failed to adequately allege a causal connection. (Doc. #14, p. 4.) Specifically, Defendant maintains that Plaintiff filed her EEOC Charge of Discrimination[2] on January 21, 2020 (Doc. #14-1, p. 2),

---

[2]Because Plaintiff references her EEOC Charge in the Complaint (Doc. #2, ¶ 22) and it is central to her claims, it is permissible for the Court to consider the document in review of Defendant's Motion to Dismiss. Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (The Court's review of a 12(b)(6) motion to dismiss is limited to "the complaint itself and any documents referred to in the complaint which are central to the claims.").

which is more than five months *after* her August 7, 2019 termination. (Doc. #14, p. 5.) Defendant asserts Plaintiff's termination cannot be a form of retaliation when it preceded Plaintiff's only alleged protected activity. (Id.) The Court agrees.

The Complaint clearly alleges that Plaintiff was terminated on August 7, 2019, prior to her filing an EEOC Charge. "[T]hus the [EEOC] charge could not have triggered Plaintiff's termination and as a result, was not causally related to the discharge." Mack v. Wilcox Cty. Comm'n, No. 09-00101-KD-B, 2009 U.S. Dist. LEXIS 114861, at *14 (S.D. Ala. Nov. 6, 2009) (dismissing a claim where the plaintiff's termination preceded his EEOC charge). Furthermore, the Complaint does not allege any other protected activity or any other adverse employment action. Accordingly, Defendant's motion to dismiss Count I is granted, and Count I is dismissed without prejudice.

### B. Count II — Violation of the FMLA

Defendant argues that Count II of the Complaint should be dismissed because it fails to allege facts sufficient to support claims of interference or retaliation under the Family and Medical Leave Act of 1933 (the FMLA). (Doc. #14, p. 5.)

"The FMLA provides eligible employees the right to 12 weeks of leave for a serious health condition that makes the employee unable to perform the functions of her position." Munoz v. Selig

Enterprises, Inc., 981 F.3d 1265, 1274 (11th Cir. 2020) (citing Batson, 897 F.3d at 1328); 29 U.S.C. § 2612(a)(1)(D)). An employee may bring two types of FMLA claims: "interference claims, in which an employee asserts that h[er] employer denied or otherwise interfered with h[er] substantive rights under the Act; and retaliation claims, in which an employee asserts that h[er] employer discriminated against h[er] because [s]he engaged in an activity protected by the Act." Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). See also Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166 (11th Cir. 2014)("the FMLA allows employees to bring a private cause of action for interference or retaliation."). Both FMLA interference and retaliation claims require the employee to establish that she qualified for leave. Hurley, 746 F.3d at 1166-67.

In her Complaint, Plaintiff alleges the following:

25. Prior to Ms. Rohttis's termination, she was entitled to leave under the Family and Medical Leave Act.

26. The Defendant, Lee County School District, made the determination that the Plaintiff's incident was not appropriate under the [FMLA], because her sustained injuries were a Workers' Compensation matter.

27. On August 10, 2019, the Plaintiff requested an appeal. The Defendant failed to respond to the request. ON August 21, 2019, the School District acknowledged receipt of the Plaintiff's appeal request, but it did not offer an appeal or due process.

(Doc. #2, ¶¶ 25-27.)  These allegations are not sufficient for either an interference or a retaliation claim.

### (1)  **FMLA Interference Claim**

Defendant argues that Plaintiff has failed to allege a plausible interference claim under the FLMA because there are no allegations that Plaintiff requested FMLA-leave while employed by Defendant, or when such a request was made and was later denied. (Doc. #14, p. 6.)

"An FMLA interference claim lies if an employee can demonstrate by a preponderance of the evidence that she was entitled to an FMLA benefit and her employer denied her that benefit." Munoz, 981 F.3d at 1274 (citation omitted). "Adequate notice to the employer is a prerequisite for an employee to take FMLA leave." Bailey v. City of Daytona Beach Shores, No. 6:12-cv-71-Orl-18TBS, 2012 U.S. Dist. LEXIS 156104, at *9 (M.D. Fla. Oct. 30, 2012) (citing Murphy v. FedEx Nat. LTL, Inc., 618 F.3d 893, 900 (8th Cir. 2010)). When determining whether the employee gave adequate notice "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Id. (quoting Darboe v. Staples, Inc., 243 F.Supp.2d 5, 17 (S.D.N.Y. 2003)).

Although Plaintiff alleges that she appealed Defendant's decision that her injuries were covered under workers'

compensation, there is no allegation that she provided notice to Defendant that she wanted to take FMLA-leave for a serious health condition.  Rather, the Complaint alleges that Plaintiff filed a workers' compensation claim and that following the claim, Plaintiff's medical providers placed her on light-duty and Defendant reassigned her to various jobs that she could perform under the work restrictions. (Doc. #2, ¶¶ 9-11.) Plaintiff therefore has not stated a plausible claim for FMLA interference, and Defendant's motion is granted as to this claim.

### (2)  FMLA Retaliation Claim

"[T]o state a retaliation claim under the FMLA, an employee must demonstrate that her employer intentionally discriminated against her based on having exercised an FMLA right—such as, for instance, taking FMLA leave." Batson, 897 F.3d at 1327 (citing 29 U.S.C. § 2615(a)-(b)). "[T]he employee must make a prima facie case showing that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." Munoz, 981 F.3d at 1275.  Defendant argues that Plaintiff has not stated a claim of retaliation under the FMLA because there are no allegations that she exercised an FMLA right, i.e., such as requesting or taking FMLA-leave, nor is it alleged when such protected activity occurred. (Doc. #14, p. 7.)

Taking the allegations as true and viewing them in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to state a plausible claim of FMLA retaliation. Plaintiff has not alleged that she engaged in statutorily protected conduct by requesting or taking FMLA leave. Furthermore, even if the appeal of Defendant's FMLA determination constituted protected activity, Plaintiff filed the appeal three days *after* her August 7, 2019 termination. See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006)(Where "an employer contemplates an adverse employment action **before** an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.")(emphasis added). Thus, there is no causal connection between any protected activity and an adverse employment action. Accordingly, Defendant's motion to dismiss Plaintiff's FMLA retaliation claim is granted.

### C. Count III — Violation of School District Policy, Race, National Origin Discrimination, & Violation of Due Process

Count III of the Complaint alleges that Defendant has violated the School District's policy, engaged in race and national origin discrimination, and violated Plaintiff's due process rights. (Doc. #2, p. 5.) Plaintiff alleges that when Defendant terminated her without providing an opportunity to appeal the termination, Defendant violated its own policy. (Id., ¶ 29.) Plaintiff further

alleges that as a Hispanic female she was treated differently than Caucasian employees who were able to avail themselves of the Professional Standards and Equity ADA Committee. (Id.)

Defendant argues that Count III must be dismissed because it violates the shotgun pleading rule. Shotgun pleadings violate Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), by "fail[ing] to one degree or another ... to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cnty. Sheriff's Ofc., 792 F.3d 1313, 1323 (11th Cir. 2015) (defining the four types of shotgun pleadings).[3]

Plaintiff's third claim constitutes a shotgun pleading because it impermissibly alleges up to four separate potential causes of action into a single count. This cluster of claims is in clear violation of Federal Rule of Civil Procedure 10(b) as it does not provide discrete causes of action in separate counts. See Warner v. City of Marathon, 718 F. App'x 834, 839 (11th Cir. 2017) (affirming district court's finding that by pleading several

---

[3] The four "rough" types or categories of shotgun pleadings identified by the Eleventh Circuit in Weiland include:

> The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.

Weiland, 792 F.3d at 1322-23.

claims in one count it violated Rule 10(b)'s preference that discrete claims be pled in separate counts to facilitate clear presentation of the issues); see also Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996) (characterizing as a shotgun pleading a complaint that "was framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts"). Thus, Defendant is unable to "discern what the [P]laintiff is claiming and to frame a responsive pleading." Embree v. Wyndham Worldwide Corp., 779 F. App'x 658, 662 (11th Cir. 2019) (citing Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). Accordingly, Plaintiff must plead each claim in a separate count. Fed. R. Civ. P. 10(b).

Defendant also argues that to the extent Plaintiff has alleged claims for race and national origin discrimination under Title VII, the claims must be dismissed because Plaintiff did not exhaust her administrative remedies prior to bringing this action. (Doc. #14, p. 9.) "Prior to filing a Title VII action . . . a plaintiff first must file a charge of discrimination with the EEOC." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) "[A] 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id. at 1280(quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir.

2000)). However, allegations of "new acts of discrimination are inappropriate" for a post-charge judicial complaint. Id. at 1279-80. Since Count III is being dismissed on other grounds, the Court need not resolve this issue.

### D. Count IV — Failure to Accommodate Disability

In Count IV of the Complaint, Plaintiff alleges that Defendant breached its duty to provide reasonable accommodations under the ADA. (Doc. #2, p. 6.)

Under the ADA, "[a]n employer "discriminate[s] against a qualified individual on the basis of disability" by, inter alia, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To state a prima facie claim for failure to accommodate under the ADA, a plaintiff must show that: (1) she is disabled; (2) she is a qualified individual, meaning able to perform the essential functions of the job; and (3) she was discriminated against because of her disability by way of the defendant's failure to provide a reasonable accommodation. Russell v. City of Tampa, 652 F. App'x 765, 767 (11th Cir. 2016) (per curiam) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)).

14

Plaintiff alleges that Defendant breached its duty to reasonably accommodate her by not allowing her to continue in the position Defendant provided while she was receiving medical treatment. (Doc. #2, ¶ 35.) Reasonable accommodations may include "reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions. Spears v. Creel, 607 F. App'x 943, 948 (11th Cir. 2015). Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." Id. at 949 (citing 29 C.F.R. § 1630.2(n)(1)).

Defendant argues that Plaintiff's allegations are insufficient to state a plausible failure to accommodate claim because she fails to allege that she was qualified for the position and that the position was vacant. (Doc. #14, p. 11.)  The Court agrees.  Plaintiff alleges that Defendant provided reassignment to various positions while she was placed on light duty, but she does not allege she could perform the essential functions of the job or that it was vacant. Even liberally construing the Complaint at this stage of the proceedings, Plaintiff has failed to sufficiently allege that Defendant did not provide reasonable accommodations. See Frazier-White v. Gee, 818 F.3d 1249, 1256 (11th Cir.

15

2016)(affirming the finding that the defendant did not fail to provide a reasonable accommodation where the plaintiff did not show that there was a specific, full-duty vacant position she was qualified for and could have done, given her medical condition); see also Willis v. Conopco, Inc., 108 F.3d 282, 286 (11th Cir. 1997)("Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified.")(citing 42 U.S.C. § 12111(9)(B)).

**E. Count V — Unlawful Termination In Violation of ADA**

In Count V of the Complaint, Plaintiff alleges that Defendant discriminated against her based upon disability. (Doc. #2, ¶¶ 15, 38-41.) Specifically, Plaintiff alleges that she was terminated because of her disability. (Id., ¶ 39.)

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Velez v. Sprint/United Mgmt. Co., No. 6:19-cv-987-Orl-31LRH, 2020 U.S. Dist. LEXIS 248396, at *6 (M.D. Fla. Dec. 15, 2020) (quoting 42 U.S.C. § 12112(a)). "To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, she (1) had a disability, (2) was a qualified

individual, and (3) was subjected to unlawful discrimination because of her disability." Batson, 897 F.3d at 1326.

Defendant seeks dismissal of Plaintiff's ADA discrimination claim because Plaintiff has not adequately alleged that she is disabled or that she was qualified to perform the essential duties of her position. The Court will address each argument in turn.

### (1)  Existence of a Disability

The ADA defines "disability" as either "a physical or mental impairment that substantially limits one or more major life activities . . . a record of such an impairment . . . or being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities are defined to

> include, but are not limited to . . . performing manual tasks, . . . walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as "the operation of a major bodily function, including but not limited to . . . neurological, [and] brain . . . functions.

Felix v. Key Largo Mgmt. Corp., No. 21-10381, 2021 WL 5037570, 2021 U.S. App. LEXIS 32402, at *10 n.1 (11th Cir. Oct. 29, 2021) (quoting 42 U.S.C. § 12102(2)(B)).

Defendant argues that Plaintiff has failed to sufficiently allege she suffers from a disability because the Complaint does not identify which life function was limited. (Doc. #14, p. 12.) In support of her ADA discrimination claim, Plaintiff alleges that she was diagnosed with "left upper extremity pain, a physical

17

impairment that substantially limited one or major life functions." (Doc. #2, ¶ 15.) Plaintiff, however, does not specify what major life activity was limited by her extremity pain. "This type of conclusory allegation regarding disability does not support a claim under the . . . ADA." <u>Constantino v. Madden</u>, No. 8:02-cv-1527-T-27TGW, 3003 WL 22025477, 2003 U.S. Dist. LEXIS 9297, at *5 (M.D. Fla. January 31, 2003). The major life function allegedly limited by a disability is "so foundational that it must not be left to conjecture and . . . the Plaintiff must be required to better articulate in h[er] complaint the basis for such claims." <u>Bearelly v. State</u>, 15 Fla. L. Weekly Fed. D. 85, 2002 U.S. Dist. LEXIS 28263, at *11-12 (M.D. Fla. 2002) (dismissing an ADA claim where the plaintiff did not identify what major life activity was allegedly limited). The Court finds Plaintiff has failed to allege that she is disabled under the ADA.

   **(2)  Whether Plaintiff Is a Qualified Individual**

   Defendant further argues that Plaintiff's ADA discrimination claim also fails because Plaintiff has not alleged that she was a qualified individual under the Act. (Doc. #14, p. 13.) As mentioned above, a "qualified individual" is someone who can perform the essential functions of her job, with or without reasonable accommodation. See <u>Sikes v. Wal-Mart Assocs., Inc.</u>, No. 8:20-CV-2484-MSS-AEP, 2021 WL 3082896, at *2 (M.D. Fla. Apr. 13, 2021) (citing 42 U.S.C. § 12111(8)). The essential functions of a

position "are the fundamental job duties of a position that an individual with a disability is actually required to perform." Garrison v. City of Tallahassee, 664 F. App'x 823, 826 (11th Cir. 2016) (quoting Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1257 (11th Cir. 2007)).

In her Complaint, Plaintiff alleges that she worked as a bus operator for the School District for nineteen years, but that following her work-accident, "her disability prevented her from being able to work as a bus operator." (Doc. #2, ¶¶ 7, 35.) Read liberally, this allegation does not support an inference that Plaintiff could perform the essential functions of her bus operating job. Furthermore, Plaintiff also failed to allege she was able to perform the essential functions of the various jobs to which she was reassigned while on light-duty restrictions. Thus, Plaintiff has failed to plausibly allege she was a qualified individual, which is fatal to her disability claim. Accordingly, Defendant's motion to dismiss Plaintiff's ADA discrimination claim is granted.

## F. Count VI — Retaliation In Violation of Florida Statute § 440.205

Defendant asserts that Count VI of the Complaint should be dismissed because it fails to allege a plausible claim for workers' compensation retaliation under § 440.205, Fla. Stat. (Doc. #14, p. 15.)

Section 440.205 provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation . . . under the Workers' Compensation Law." To state a claim for workers' compensation retaliation under § 440.205, "Plaintiff must allege the following: (1) [s]he engaged in the protected activity of applying for workers' compensation; (2) [s]he was adversely affected by an employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision." McGuire v. UPS, No. 8:15-cv-2792-T-24 JSS, 2016 U.S. Dist. LEXIS 203207, at *7 (M.D. Fla. Oct. 24, 2016).

In its motion, Defendant argues that Plaintiff cannot establish a causal connection between her protected activity and an adverse employment action due to a substantial delay between the two events. (Doc. #14, pp. 14-15.) "A causal connection between a plaintiff's protected activity and an employer's adverse employment action may be inferred from temporal proximity so long as the timing between the two events is 'very close.'" Ortiz v. Ardaman & Assocs., No. 6:17-cv-1430-Orl-40GJK, 2019 U.S. Dist. LEXIS 106250, at *38 (M.D. Fla. Mar. 27, 2019) (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)). In the absence of any other evidence of causation, the Eleventh Circuit has held that a three-month proximity between a protected activity and an adverse employment action is insufficient to create

a jury issue on causation. Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006).

Plaintiff alleges that she "filed a Workers' Compensation claim with the Lee County School District on March 15, 2018," and that she received benefits from the School District. (Doc. #2, ¶ 9, 11-12.)  Plaintiff further alleges that since her work-related accident in March 2018, her supervisors harassed and intimidated her for filing a workers' compensation claim, among other things. (Id., ¶¶ 44-45.) Plaintiff was suspended without pay on May 20, 2019, and was ultimately terminated from her employment with the School District on August 7, 2019. (Id., ¶¶ 16, 22.)

To the extent Plaintiff is alleging that she was suspended and terminated from her position as a school bus driver due to filing a workers' compensation claim, the facts do not support an inference of causation.  Taking the allegations as true, there is approximately a fourteenth month gap between when Plaintiff applied for workers' compensation benefits and when she was suspended, as well as more than seventeen months in regard to her termination. See, e.g., Gonzales v. Pasco Cnty. Bd. of Cnty. Comm'rs, No. 8:11-cv-1397-T-30TGW, 2013 WL 179948, 2013 U.S. Dist. LEXIS 7249, at *24 (M.D. Fla. Jan. 17, 2013)(stating that there was no causal connection due to the five month gap between the application for workers' compensation benefits and the alleged adverse employment action); Sierra v. Port Consolidated

Jacksonville, L.L.C., 2016 WL 927189, 2016 U.S. Dist. LEXIS 28085, (M.D. Fla. Mar. 4, 2016) (same for gap of nine months); Pericich v. Climatrol, Inc., 523 So. 2d 684, 686 (Fla. 3d DCA 1988) (same for gap of over a year). Cf. Renta v. Cigna Dental Health, Inc., No. 08-60938CIV, 2009 WL 3618246, 2009 U.S. Dist. LEXIS 101491, (S.D. Fla. Oct. 29, 2009) (explaining that a "close temporal proximity" is between one and two months). Accordingly, the time gap between when Plaintiff filed for workers' compensation benefits and her suspension or termination is too significant to support an inference of retaliation under § 440.205.

Defendant further argues that Count VI is also due to be dismissed because Plaintiff's allegation that after filing a workers' compensation claims she was harassed and intimidated by her supervisors when a "district representative went to her personal residence to harass her," is a legal conclusion without any factual support. The Court does not agree as this allegation provides enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). Nevertheless, the Court is unable to determine when the adverse action, i.e., the harassment or intimidation occurred in relation to the protected activity. As such, there are no factual allegations from which the Court may infer a causal connection. Accordingly, Plaintiff's retaliation claim pursuant

to § 440.205 is dismissed without prejudice.  See McGuire v. UPS, No. 815CV2792T24JSS, 2016 WL 3428499, 2016 U.S. Dist. LEXIS 81221, at *8-10 (M.D. Fla. June 22, 2016) (dismissing retaliation claim without prejudice where complaint failed to allege when protected activity occurred in relation to adverse action).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. #14) is **GRANTED.**

2.  Plaintiff may file an Amended Complaint within **FOURTEEN (14) days** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __22nd__ day of February, 2022.


_____

JOHN E. STEELE

SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of record

23