UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NERY ROHTTIS,

     Plaintiff,

v.                        Case No: 2:21-cv-737-JES-NPM

THE SCHOOL DISTRICT OF LEE
COUNTY, FLORIDA,

     Defendant.

_____

## OPINION AND ORDER

     This matter comes before the Court on review of defendant's Motion For Summary Judgment (Doc. #59) filed on March 28, 2023. Plaintiff filed a Response in Opposition (Doc. #62) on April 27, 2023, to which Defendant Replied (Doc. #63) on May 11, 2023.

     Plaintiff Nery Rohttis (Plaintiff or Ms. Rohttis) is a former School Bus Operator for defendant The School District of Lee County, Florida (Defendant or the School District). Plaintiff filed an eight-count Second Amended Complaint (SAC) against Defendant asserting various claims of employment discrimination. (Doc. #40.) Defendant now seeks summary judgment on the SAC's last two remaining counts.[1] In these counts Plaintiff alleges the School District retaliated against her by suspending her without

_____

[1] On August 1, 2022, the Court dismissed without prejudice Counts I, II, III, IV, VII, and VIII of the Second Amended Complaint. (Doc. #50.)

1

pay from her job as a bus driver and not renewing her contract for the 2019-2020 school year after she objected to discriminatory actions.  Count V alleges this conduct violated the American with Disabilities Act, 42 U.S.C. §§ 12101, et seq. as amended (the ADA), while Count VI alleges this conduct violated the Florida Civil Rights Act (the FCRA).  For the reasons set forth below, the motion is granted in part and denied in part.

## I.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N.

Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party. Baxter v. Roberts, 54 F.4th 1241, 1253 (11th Cir. 2022). However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

The undisputed material facts, or the disputed facts as viewed in the light most favorable to Plaintiff as the non-moving party, are as follows:

Plaintiff was born in the Dominican Republic and her first language is Spanish; she understands English but does not speak it correctly.  (Doc. #59-1, p. 5.)[2]  Plaintiff attended but did not

---

[2] The page numbers refer to those generated by the Court's computer system upon filing (upper right-hand corner) and do not

complete high school in the Dominican Republic, and eventually obtained a high school equivalent diploma in Florida. (Id., p. 6.)

Plaintiff was employed by the School District as a School Bus Operator for over eighteen years, from approximately March 2000 through August 2019. (Id., p. 7.) Plaintiff worked from Defendant's "Transportation West Compound" in Cape Coral, Florida. (Id., p. 49, ¶ 6.) Plaintiff's immediate supervisor was Yvonne Stewart, and Stewart's supervisor was Richard Perdue, the School District's Director of Transportation Services for the Transportation West Zone. (Id., pp. 8-9.)

On March 15, 2018, Plaintiff experienced a work-related accident when she fell while helping a student exit a school bus. (Id., pp. 10, 18.) Plaintiff injured the left side of her body, including fracturing her left wrist, which required her arm to be placed in a cast for two to three months. (Id., pp. 10, 12.) Plaintiff immediately filed a claim for Workers' Compensation benefits against the School District (Id., p. 10), and eventually retained counsel in connection with that claim. (Id., p. 3.)

Plaintiff remained out of work until July 19, 2018, when her treating physician, Dr. Ed Gomez, released her to work under the restrictions of "Light Duty Max Lifting 10 lbs." (Id., pp. 12,

---

always correspond with the page number or exhibit as designated by the parties.

43.)   The   School   District   accommodated   Plaintiff's   work restrictions by reassigning Plaintiff to various jobs, including assisting the dispatcher, helping children at lunch time, and assisting with students who arrive by bicycle. (Id., p. 13.) Plaintiff believes that she was not physically capable of operating a school bus while she was restricted to light-duty work. (Id.) Plaintiff did not operate a school bus for more than one year following her March 2018 accident (Id., pp. 13, 15; Doc. #62-1, p. 2, ¶ 10), and her commercial driver's license expired on November 3, 2020. (Doc. #59-1, p. 7.)

On April 9, 2019, Dr. Gomez completed a Florida Workers' Compensation Uniform Medical Treatment Status Report, stating that Plaintiff was released to "regular duty" and is "ok to drive," but did not determine maximum medical improvement (MMI). (Doc. #63-1, p. 5.) Plaintiff believed she could "go back and perform her duties" upon Dr. Gomez's release. (Doc. #59-1, p. 14.)  Dr. Allen Tafel (pain management) released Plaintiff to return to regular-duty work approximately one week later. (Id.)

On April 12, 2019, Mr. Perdue requested that Plaintiff take a class on April 22, 2019, since Plaintiff "has been out for so long."[3] (Doc. #62-1, p. 16.) At an unknown date, Deborah Ferris,

---

[3] The record does not indicate the type of class or testing that Plaintiff was to undergo beginning on April 22nd. (Doc. #62-1, p. 16.

the School District's Road Safety Supervisor, administered Plaintiff's testing.  Because Ms. Ferris believed Plaintiff was not capable of performing the physical portion of the testing, she did not require Plaintiff to do so.  (Id., p. 13, ¶ 7.) On April 17, 2019, Ms. Ferris emailed Mr. Perdue to "question[] [Plaintiff's] ability at this time to complete class due to the fact that she cannot participate in the hands on portion because of her injuries and being on light duty."  Ms. Ferris also asked Mr. Perdue whether Plaintiff had undergone dexterity testing. (Doc. #62-1, p. 13, ¶ 8, p. 16.) Mr. Perdue responded that "[Plaintiff] is not on light duty.  She has been returned to full duty. She has no limitations." (Id., p. 16.)

On May 7, 2019, Dr. Gomez completed a second Florida Workers' Compensation Uniform Medical Treatment Status Report stating that Plaintiff could return to "regular duty," she had reached MMI, and had a 1% impairment rating (body as a whole). (Doc. #59-1, p. 43.) Later in the day, about 4:30 p.m., Plaintiff attempted to complete eight hours of "behind-the-wheel" training that was required by the School District (and Florida law) before Plaintiff could return to her former position as a School Bus Operator.[4] (Id., pp. 14-15,

_____

[4] Under the Florida Administrative Code, "[a]t the time of reemployment, the school board shall assure that:

  (8) . . . If not more than a twelve continuous calendar
  month break in service has occurred, a[] [school bus]
  operator shall be required to complete eight (8) hours

50; Doc. #40-1, p. 4.)   Ms. Anna Basye, the School District's
Safety and Training Instructor, conducted the "behind-the-wheel"
training with Plaintiff. (Doc. #40-1, p. 4.)   About two hours
later, Ms. Basye reported the following to at least nine of
Defendant's transportation supervisors:

> I noticed that Nery was not using her left hand at all
> while driving. I told her that we should be driving with
> both hands. It seemed very dangerous with her turning
> corners with only one hand. I could tell that it was
> very hard for her to do. She even used her right hand to
> turn on her directional signals.  Sometimes she would
> get to shaking [and] trembling. After about fifteen or
> twenty minutes she started crying an [sic] said her
> shoulder and hand was in a lot of pain. She said she
> couldn't drive anymore.  So I drove back to west compound
> and we both spoke to Nancy.  Nery [Plaintiff] told us
> both that it was too painful to drive.  She also said
> she was very sad and depressed, that she can't do
> anything that she used to do or do it normally.  It is
> my opinion and I am no [doctor] but she is not able
> enough to drive a school bus. . . .

(Doc. #40-1, p. 4.) Plaintiff testified she was not given another
opportunity to complete the "behind-the-wheel" training, nor did
the School District request that Plaintiff undergo additional
testing.  (Doc. #59-1, pp. 15-16.)

---

of inservice training related to their responsibilities
for transporting students prior to driving a school bus
with students. If a period exceeding twelve (12)
calendar months has occurred, the operator shall be
required to successfully complete all of the
requirements of subsections (2) through (6) of this
rule.

Fla. Admin. Code Ann. R. 6A-3.0141.

On the morning of May 20, 2019, Plaintiff presented to Dr. Tafel's physician's assistant for a follow-up visit, stating her primary complaint was "left upper extremity pain." (Id., p. 45.) Plaintiff advised the physician's assistant that she was recently cleared by Dr. Gomez to return to regular duty as a school bus operator, but she "could not even tolerate it for 25 minutes" and was "unable to turn the steering wheel." (Id.) The physician's assistant opined that Plaintiff had continued left upper extremity pain symptoms, but her "work status remains the same as per Dr. Gomez", i.e., regular-duty work. (Id., p. 46.)

On the afternoon of May 20, 2019, Plaintiff clocked into Defendant's Transportation West Compound to begin working. Plaintiff spoke with Gladys Rodriguez, her supervisor, and Mr. Perdue, who was on a speaker phone. (Id., p. 19.) Mr. Perdue informed Plaintiff that her medical records showed she had no work restrictions, and therefore she was required to meet the minimum qualifications for her position, which included the eight hours of "behind-the-wheel" training. (Id.; Doc. #63-1, p. 2, ¶ 5.) Mr. Perdue advised Plaintiff to communicate with the School District's Insurance Coordinator, Cathy Richards, as well as Plaintiff's attorney and physicians, regarding any concerns about her ability to perform essential functions of her job in light of her release

to regular-duty work.[5] (Doc. #63-1, p. 2, ¶ 5.)  Plaintiff, on the other hand, recalls that during this meeting Mr. Purdue informed her that she was suspended without pay and must use her sick leave going forward. (Doc. #62-1, p. 4, ¶ 5.) Plaintiff was provided no documentation of her suspension. (Id.)

After this meeting, Plaintiff signed a letter dated May 20, 2019, addressed to Mr. Perdue. (Doc. #40-1, p. 6.) The letter stated it was to "confirm our meeting of May 20, 2019" with Yvonne Stewart.  (Id.)  The letter stated that Mr. Perdue had "suspended"[6] Plaintiff without pay, and she would have to use her sick time to make up the hours.  (Id.)  The letter further stated that Plaintiff had been informed that she could not return to work until the School District's workers' compensation adjuster, Magda Perez or Cathy Richards, spoke with Plaintiff's attorney regarding her employment situation. (Id.)  The letter went on to state that Plaintiff had not heard back from the School District about her employment status; that her treating doctors had released her to regular duty; and she was able and willing to return to work. (Id.)

_____

[5] During this meeting (or at any other time), Plaintiff did not advise her supervisor(s) that she wanted to remain working in her light-duty assignment(s) if she could not return to her former school bus operator position.  (Doc. #59-1, p. 19.)

[6]  Mr. Perdue maintains that Plaintiff was never suspended during the meeting or anytime thereafter. (Doc. #63-1, p. 2.) For summary judgment purposes, this factual dispute is resolved in favor of Plaintiff.

Plaintiff concluded by stating she believed the action violated School Board policy and was "discriminatory." (Id.)

In or around the first week of August 2019, the School District's Routes Supervisor, Reina Estevez, went to Plaintiff's home and left a note with Plaintiff's adult son (who lives with Plaintiff). (Doc. #59-1, p. 24.) The note stated that Ms. Estevez had been trying to contact Plaintiff by phone, but the phone number on file for Plaintiff was incorrect. (Id.) The note requested that Plaintiff call Ms. Estevez or "Mr. Lloyd," and left their phone numbers.[7] (Doc. #62-1, p. 5.)

Plaintiff did not participate in the School District's August 2019 job bidding process, during which school bus routes for the coming school year were assigned to school bus operators. (Doc. #59-1, pp. 20, 50.) According to Plaintiff, supervisor Yvonne Steward informed Plaintiff she could not attend the bidding process because she was unable to drive a school bus after failing to pass the required training. (Id., pp. 21-22.)

By certified letter dated August 7, 2019, Roger Lloyd, the School District's Director of Transportation Services, advised Plaintiff that she had failed to report to work since May 30, 2019. (Doc. #40-1, pp. 8, 10; Doc. #62-1, p. 5.) The letter further stated that Mr. Lloyd would be recommending to the Superintendent

---

[7] There is no record evidence showing that Plaintiff contacted Ms. Estevez or Mr. Lloyd.

(Gregor K. Adkins) that Plaintiff's employment contract as a school bus operator for the 2019-2020 school year not be renewed due to "abandonment of position" effective August 7, 2019. (Doc. #40-1, p. 8.)  The summary judgment record does not contain Superintendent Adkins' actual decision or a termination decision.

Plaintiff signed a certified letter dated August 7, 2019, to the U.S. Equal Employment Opportunity Commission (EEOC) that alleged that the School District failed to provide her with Workers' Compensation benefits, and refused to provide her with any work or place her on a work schedule. (Doc. #40-1, pp. 14-15.)

On August 10, 2019, Plaintiff emailed a letter to the Superintendent stating that the decision not to renew her position as a bus driver effective August 7, 2019, was an "unfair decision" and that she requested an appeal to be heard by an Administrative Law Judge. (Doc. #40-1, p. 10.)  The Superintendent's office acknowledged the email, stating it had been referred to the appropriate staff personnel.  (Id., p. 12.)

On July 14, 2019, the EEOC issued a right to sue letter. (Id., p. 2.)

On August 31, 2019, Plaintiff received a Cobra Continuation Enrollment Form.  This Form stated that the qualifying event was Plaintiff's "Termination of Employment" and the qualifying event date was "08/31/2019".  (Doc. #40-1, p. 20.)

On January 21, 2020, Plaintiff filed a Charge of Discrimination with the EEOC asserting claims of discrimination and retaliation in violation of the ADA. (Doc. #40-1, p. 22.)

**III.**

In Count V and Count VI of the Second Amended Complaint, Plaintiff brings retaliation claims under the ADA[8] and FRCA, respectively. (Doc. #40, ¶¶ 86-95, 96-105.) The Court evaluates retaliation claims brought under the ADA under the same framework as applied to Title VII actions, <u>Todd v. Fayette Cnty. Sch. Dist.</u>, 998 F.3d 1203, 1219 (11th Cir. 2021), and evaluates FCRA retaliation claims under the same framework as ADA claims. <u>Russell v. City of Tampa</u>, 737 F. App'x 922, 923 (11th Cir. 2018). Thus, federal case law interpreting the ADA and Title VII is also applicable to FCRA claims. <u>Matamoros v. Broward Sheriff's Off.</u>, 2 F.4th 1329, 1336 (11th Cir. 2021). The Court will therefore analyze Plaintiff's ADA and FCRA retaliation claims together. <u>Russell</u>, 737 F. App'x at 923.

The ADA's anti-retaliation provision makes it unlawful for an employer to "discriminate against any individual because such individual has opposed an unlawful act under the ADA, or because such individual made a charge, testified, assisted, or

---

[8] Because the relevant events took place after the ADA Amendments Act of 2008 ("ADAAA") became effective on January 1, 2009, the post-ADAAA version of the ADA governs. <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746 F.3d 1264, 1267 (11th Cir. 2014).

participated in any manner in an investigation, proceeding, or hearing under those statutes." 42 U.S.C. § 12203(a).  ADA retaliation claims based on circumstantial evidence, as here, are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Batson v. Salvation Army, 897 F.3d 1320, 1328 (11th Cir. 2018).  Under the McDonnell Douglas framework, "[t]o avoid summary judgment, a plaintiff must establish a prima facie case of retaliation." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999). To establish a prima facie case of retaliation under the FCRA and the ADA, Plaintiff must demonstrate that: "(1) she engaged in conduct protected by the ADA; (2) she suffered an adverse employment action; and (3) that a causal connection exists between the two." Batson, 897 F.3d at 1326.  See also Ring v. Boca Ciega Yacht Club Inc., 4 F.4th 1149, 1163 (11th Cir. 2021) (same); Blizzard v. Appliance Direct, Inc., 16 So. 3d 922, 926 (Fla. 5th DCA 2009) (setting forth same elements to establish a prima facie case of retaliation under FCRA).

If Plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action." Batson, 897 F.3d at 1329; Ring, 4 F.4th at 1163.  If this is done, the burden shifts back to Plaintiff to show that the asserted reason is merely a pretext for discrimination because the reason is false and discrimination was

the real reason. Ring, 4 F.4th at 1263; Brooks v. Cnty. Com'n of
Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir.
2006)(citations omitted). A plaintiff can show pretext by
demonstrating "such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in [the
employer's] proffered legitimate reasons for its action that a
reasonable factfinder could find them unworthy of credence."
Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344,
1348 (11th Cir. 2007) (quotation marks omitted).

**IV.**

The School District argues that it is entitled to summary
judgment on both counts because Plaintiff cannot establish the
third element of a prima facie case of retaliation. (Doc. #59, p.
10; Doc. #63, p. 5.) Alternatively, even if Plaintiff could
establish a prima facie case, the School District argues that it
chose not to reappoint Plaintiff to her position for the 2019-2020
school year for legitimate, non-retaliatory reasons. (Doc. #59, p.
9.)

**A. Plaintiff's Prima Facie Case**

The Second Amended Complaint alleges that Plaintiff engaged
in protected activity by objecting to disability discrimination,
which proximately caused Defendant to retaliate against Plaintiff
by changing her work conditions, disciplining her, and terminating
her employment. (Doc. #40, ¶¶ 87-89, 97-99.) Specifically,

14

Plaintiff alleges that in a May 20, 2019, letter she complained to Mr. Perdue that she was "suspended without pay," which Plaintiff believed was in violation of school board policy and was "discriminatory." (Id., ¶¶ 23, 28; Doc. #40-1, p. 6.) Thereafter, Mr. Lloyd informed Plaintiff (via certified mail) that he was recommending to the Superintendent that her employment contract for the 2019-2020 school year not be renewed, effective August 7, 2019. (Doc. #40, ¶ 28; Doc. #40-1, p. 8.)

For purposes of summary judgment, Defendant challenges only the third element of Plaintiff's prima facie case. Defendant argues that Plaintiff has offered no facts showing that any alleged adverse employment actions, i.e., her "suspension" or the non-renewal of an employment contract, were causally connected to the protected conduct, i.e., Plaintiff's May 20, 2019 letter to Mr. Perdue. (Doc. #59, p. 10.) In response, Plaintiff argues that she has presented sufficient evidence to create a genuine dispute of material fact on this issue. (Doc. #62, pp. 5-6.)

"To establish a 'causal link' for purposes of the third element, a plaintiff need only demonstrate 'that the protected activity and the adverse action were not wholly unrelated.'" Matamoros, 2 F.4th at 1336 (quoting Shotz v. City of Plantation, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)) (emphasis omitted). This element is to be broadly construed. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). "A plaintiff

makes this showing if she provides sufficient evidence that the decisionmaker became aware of the protected conduct and that there was a close temporal proximity between this awareness and the adverse action." Id.  See also Hughes v. Wal-Mart Stores East, LP, 846 F. App'x 854, 858 (11th Cir. 2021). Additionally, "causation may be established when a decisionmaker followed a biased non-decisionmaker's recommendation without independently investigating the basis for the complaint. In such a case, the recommender is using the decisionmaker as a conduit, or a 'cat's paw,' to give effect to the recommender's own discriminatory animus." Matamoros, 2 F.4th at 1336 (citations omitted).

Plaintiff asserts that two adverse actions were causally linked to the protected May 20, 2019 letter to Mr. Perdue.  The Court discusses each in turn.

**(1)  May 20, 2019 Suspension Without Pay**

For purposes of the summary judgment motion, Defendant assumes (although it denies) that Plaintiff was "suspended" from her employment.  Defendant argues there can be no causal connection between Plaintiff's May 20, 2019 letter and her alleged "suspension" because Plaintiff sent her letter *in response to* and *after* her suspension. (Doc. #59, p. 10.) The Court agrees.

To establish causation, "[a]t a minimum, [the employee] must show that the adverse act *followed* the protected conduct." Cardelle v. Miami Beach FOP, 593 F. App'x 898, 903 (11th Cir. 2014)

16

(quoting Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1284 (11th Cir. 1999)(emphasis added)).   Viewed in the light most favorable to Plaintiff, the evidence establishes that Mr. Perdue told Plaintiff she was suspended before Plaintiff sent the letter. Thus, Plaintiff cannot show that Mr. Purdue (or any other School District employee) "suspended" her on May 20th in retaliation for a letter which had not yet been written.   See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2005) ("[I]n a retaliation case, when an employer contemplates an adverse employment action *before* an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.")(emphasis added). See also Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him."). Because no reasonable juror could find any causal connection between Plaintiff's "suspension" and this subsequent protected activity, summary judgment is granted as to this portion of Plaintiff's retaliation claims.

**(2)  Non-Renewal of Plaintiff's Employment Contract**

Defendant also argues that Plaintiff cannot prove causation between her May 20, 2019 letter and the subsequent non-renewal of her employment contract for the 2019-2020 school year because (a) there is no evidence showing that the decisionmaker(s) were aware

of any protected activity, and (b) there are two intervening factors which preclude causation. (Doc. #59, pp. 10-12; Doc. #63, pp. 6-7.) The Court finds neither argument is persuasive.

**(a)   Decisionmaker's Awareness of Protected Activity**

It is undisputed that on August 7, 2019, Mr. Lloyd wrote that he would recommend to Superintendent Adkins that Plaintiff's employment contract not be renewed based on Plaintiff's "abandonment" of her employment. While the parties have not identified an actual non-renewal letter from Superintendent Adkins, the COBRA notice states that Plaintiff's employment was terminated on August 31, 2019. The summary judgment record establishes that before this termination Plaintiff had notified the Superintendent in writing (on August 10, 2019) that she was appealing Mr. Lloyd's "unfair" recommendation for termination (Doc. #40-1, p. 10), and that the Superintendent's office had responded that Plaintiff's email was forwarded to the appropriate staff assigned to handle such issues. (Id., p. 12.) A reasonable jury could conclude that Superintendent Adkins was actually aware of Plaintiff's prior protected activity. See Matamoros, 2 F.4th at 1336. Additionally, the summary judgment evidence may support a "cat's paw" theory of liability. See id. The Court therefore finds that Plaintiff has shown, for summary judgment purposes, an awareness by decisionmaker(s) sufficient to support a causal link.

The burden of causation in an ADA retaliation claim can also be met by showing close temporal proximity between the statutorily protected activity and the adverse action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). However, if there is a delay of more than three months between the protected activity and the adverse employment action, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation. Id. See also Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004)("By itself, the three month period ... does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.").

Here, there is a lapse of three or more months between Plaintiff's protected activity on May 20, 2019 and her August 31, 2019 termination. The Court nevertheless finds that there is such "other evidence" in this case from which a reasonable jury could conclude that the evidence tends to show causation.  Plaintiff asserts that she attempted to report to work repeatedly during the time period between when she was released to regular duty and her termination, but was turned away by Mr. Purdue. (Doc. #59-1, p. 20.) Plaintiff further asserts that the day before the school route bidding process was to begin, after engaging in protected activity, she went to Yvonne Steward, who told Plaintiff that she could not participate in the bidding process because she was unable to drive

a bus.  Defendant has taken the position that Plaintiff would not be allowed to drive a school bus for the School District because she failed to complete eight hours of the "behind-the-wheel" training as mandated by Florida state law.  Ms. Ferris, however, stated in her affidavit that she had conducted several tests for operating a school bus where employees failed the physical portions of the tests, but were allowed by other School District supervisors to retake the test. (Doc. #62-1, p. 14 ¶ 11.) The School District never offered Plaintiff another opportunity to take her "behind-the-wheel" training.  A reasonable jury could conclude that the School District's failure to provide a second opportunity to take mandatory tests was merely an attempt by the School District to categorize Plaintiff as noncompliant with state-issued regulations, thus providing a pretextual reason for her termination. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998) (listing a series of adverse events that occurred after plaintiff filed EEOC charge that qualified as "other evidence".).  Accordingly, whether the "other evidence" is sufficient to establish causation is a matter for the trier of fact.

**(b)   Whether Intervening Factors Preclude Causation**

Defendant asserts that any inference of retaliation created by the temporal proximity between Plaintiff's protected activity and her termination is dispelled by intervening factors, i.e.,

other reasons for the adverse action arising after the protected activity. (Doc. #59, pp. 10-11.) More specifically, Defendant argues that Plaintiff admitted she failed to complete mandatory "behind-the-wheel" training, and did not attend the bus route bidding process after Defendant repeatedly attempted to contact Plaintiff without success. (Id., p. 11.) Defendant emphasizes that it was only after Plaintiff failed to attend the school bus route bidding that Mr. Lloyd recommended the non-renewal of Plaintiff's employment contract for "abandonment" of her position. (Id.)

Plaintiff, on the other hand, asserts that while she did not initially complete the mandatory "behind-the-wheel" training, she was never given another opportunity by the School District to do so. As discussed above, Ms. Ferris stated that she had conducted several tests for operating a school bus where employees failed the physical portions of the tests, but were allowed by other School District supervisors to retake the test. Plaintiff maintains that she did not attend the bidding process because a School District employee told Plaintiff she could not participate since she had not completed the mandatory training. As to the note left by Ms. Estevez with Plaintiff's son, the import of the note is not apparent as it only asked Plaintiff to call Mr. Lloyd or Ms. Estevez.

Although "[i]ntervening acts of misconduct can break any causal link between the protected conduct and the adverse

employment action", <u>Henderson v. FedEx Express</u>, 442 F. App'x 502, 506 (11th Cir. 2011), there are material facts in dispute about whether Plaintiff failed to comply with testing standards or was prohibited by the School District from completing mandatory testing, and whether Plaintiff failed to engage in the bidding process or was prevented by the School District from doing so, that preclude the Court from finding on summary judgment that Plaintiff's actions severed any causal connection. <u>Cf.</u> <u>Hankins v. AirTran Airways, Inc.</u>, 237 F. App'x 513, 520-21 (11th Cir. 2007) (plaintiff's violation of the airline's crew member handbook after a discrimination complaint severed any causal connection between protected act and termination). Because a reasonable jury could find that Plaintiff did not engage in any misconduct sufficient to break the causal chain, Defendant is not entitled to summary judgment as to Plaintiff's prima facie case of retaliation.

### (3) Legitimate Non-Retaliatory Reason(s) For Termination

If Plaintiff makes out a prima facie case under the burden-shifting framework, the employer must articulate a legitimate, non-discriminatory reason for the adverse action. <u>Batson</u>, 897 F.3d at 1329. Defendant's burden to provide a legitimate reason for its actions is "a low bar to hurdle." <u>Flowers v. Troup Cnty., Ga., Sch. Dist.</u>, 803 F.3d 1327, 1336 (11th Cir. 2015). An "employer's burden is merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons.'" <u>Chapman</u>

v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (citation omitted). See also Cooper v. Jefferson Cnty. Coroner & Med. Exam'r Off., 861 F. App'x 753, 757 (11th Cir. 2021). Rather, the reason must simply be "one that might motivate a reasonable employer." Chapman, 229 F.3d at 1030.

Defendant argues that even if Plaintiff has established a prima facie case of retaliation, the School District is still entitled to summary judgment because it decided not to renew Plaintiff's contract for legitimate, non-discriminatory and non-retaliatory reasons. (Doc. #59, p. 12.) Defendant asserts that Plaintiff's failure to meet the minimum job requirements for school bus operators, i.e., completion of the Florida State-mandated "behind-the-wheel" training and the dexterity test, especially when combined with Plaintiff's failure to attend the school bus routes bidding process, are non-discriminatory reasons to not reappoint Plaintiff to a school bus operator position. (Id., pp. 13-14.)

The School District's reasons are adequate to satisfy its burden of production at the summary judgment stage. See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769-70 (11th Cir. 2005) (employer's burden is exceedingly light and is satisfied as long as the employer articulates a clear and reasonable non-discriminatory basis for its actions). Defendant has provided sufficient evidence that Plaintiff did not complete mandatory

training that is required before she can operate a school bus on behalf of the School District. "Terminating an individual's employment for failing to fulfill a requirement of the job . . . is a legitimate reason to fire someone." Callaway v. Lee Mem'l Health Sys., No. 2:19-cv-745-SPC-MRM, 2022 WL 93534, 2022 U.S. Dist. LEXIS 4576, at *17 (M.D. Fla. Jan. 10, 2022). Every employer has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory (or retaliatory) reason." Id.

### (4)  Whether Defendant's Proffered Reason Was Pretext

Upon Defendant providing a legitimate, non-discriminatory reason, the burden again shifts back to Plaintiff to show evidence sufficient to permit "a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Batson, 897 F.3d at 1329 (citation omitted.) In other words, Plaintiff must "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)

(citations omitted). "A reason is not pretext for retaliation unless it is shown both that the reason was false, and that retaliation was the real reason." Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1136 (11th Cir. 2020) (quotations, emphases, and brackets omitted).

A review of the record reveals evidence that would allow a fact finder to potentially disbelieve the School District's proffered explanation for its actions. The reasons set forth previously in Plaintiff's prima facie case also present genuine issues of fact with respect to whether Defendant's reasons for terminating Plaintiff were pretext for retaliation.

For example, Plaintiff admits she did not complete the "behind-the-wheel" training and was not given another opportunity to complete the testing, but there is evidence showing that on other occassions the School District permitted employees to retake the physical portion of the test/training. Defendant argues that Plaintiff must have also completed the mandatory dexterity test, however, there is no record evidence that she was provided such an opportunity. Defendant merely states that Plaintiff used only one hand to turn corners and used her right hand to control directional signals located on the left of the bus steering wheel during her "behind-the-wheel" training with Ms. Anna Basye, which does not meet the requirements of a dexterity test. (Doc. #59, pp. 13-14.) Defendant also argues that Plaintiff failed to attend the bidding

process to obtain a school bus route.  As discussed above, Plaintiff was told by Ms. Steward not to attend the bidding event because she could not drive a school bus after failing to complete the required training.  A reasonable jury could find there are "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in Defendant's proffered legitimate reasons for its actions and that they are "unworthy of credence."  Springer, 509 F.3d at 1348.  Summary judgment is therefore denied as to this portion of Plaintiff's retaliation claims.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion For Summary Judgment (Doc. #59) is **GRANTED IN PART AND DENIED IN PART.**

2. The motion is **GRANTED** as to Counts V and VI to the extent that these counts are based on the claim of retaliation based on Plaintiff's "suspension".  The motion is otherwise **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___20th___ day of June, 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record

26